JACOB F. BROWN & others *vs.* NATIONAL DOCK AND STORAGE WAREHOUSE COMPANY.

Suffolk. March 22, 1921. — May 28, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Public Warehouseman. Bailment. Contract,* Performance and breach. *Practice, Civil,* Parties.

In 1918, under governmental regulations in effect at the time of the World War, a dealer approved by the federal government received in Boston as consignee from the grower two hundred and six bags of wool, placed them in his own warehouse under his own lot number, opened them and graded the wool and notified the federal authorities that the wool was ready for inspection. The federal valuation committee then inspected the wool and notified the dealer of the price which they fixed, gave the lot a new number designated by them, and made a proposal of purchase of the entire lot for the government, which was accepted by the dealer and was confirmed by the government. The dealer then marked the bags with a quartermaster's department stencil and the government's lot number and in his own teams transported them to a public warehouseman, who gave therefor a "memorandum for insurance," which had a heading, "This notice is not a warehouse receipt." The price of the wool and all charges for commissions, interest and bags, which the dealer had advanced, were paid by the government to the dealer. Pending disposition of the wool, the dealer paid storage charges under an arrangement whereby he should be reimbursed therefor by the government, if it took the wool, or by one to whom it sold it. The quartermaster's department then sold the wool and directed the dealer to deliver it to the purchaser and the dealer gave the warehouseman directions accordingly. The warehouseman delivered all but thirteen bags, which had been lost through his negligence. The purchaser paid the dealer all storage charges advanced by him on all but the thirteen bags. The purchaser demanded of the dealer either delivery or payment for the missing wool, and, failing delivery, rendered a bill to the dealer for it and notified the warehouseman that he released him "from all claim in connection with this loss," as he had "billed this merchandise up to" the dealer and was holding the dealer responsible. In an action of contract by the dealer against the warehouseman for the value of the missing wool, the foregoing facts appeared in a report and no question of pleading was raised. *Held,* that

(1) Upon the sale of the wool to the government, the dealer held it as bailee until he stored it on the government's behalf with the warehouseman;

(2) Upon the sale by the government, it transferred its title as owner and bailor to the purchaser, and its rights under the contract of bailment passed to him;

(3) When the purchaser, in default of receiving the thirteen bags of wool, rendered its bill to the dealer therefor, the dealer succeeded to the rights as bailor as to those thirteen bags;

(4) The dealer was entitled to maintain the action.

CONTRACT by a firm, doing business as copartners under the name of Brown and Adams, against a public warehouseman for failure to deliver thirteen bags of wool to the plaintiffs. Writ in the Municipal Court of the City of Boston dated September 25, 1919.

On removal to the Superior Court, the action was tried before *Morton*, J. Material evidence is described in the opinion. At the close of the evidence the defendant presented a motion that a verdict be ordered in its favor, and requests for instructions to the jury. In a report of the action to this court, the judge stated: " Being of the opinion that on the facts heretofore stated, which include all material testimony, there was no question in dispute for the jury and that the plaintiff was entitled to recover, I directed the jury to return a verdict for the plaintiff in the sum agreed on by the parties [$1,683.06] (in the event that my ruling is correct) and, at the request of the defendant I now report the case to the Supreme Judicial Court; if my directing a verdict for the plaintiff was right, judgment to be entered on the verdict; if my so directing a verdict was wrong, a new trial [is to be] granted or such other order entered as law and justice may require."

*R. Homans*, for the defendant.

*L. Withington*, for the plaintiffs.

PIERCE, J. This is an action of contract to recover for failure to deliver thirteen bags of wool out of a lot of two hundred and six bags stored with the defendant, a public warehouseman, in September, 1918. The case was heard in the Superior Court, and is reported by the presiding judge to this court in the following terms: " I now report the case to the Supreme Judicial Court; if my directing a verdict for the plaintiff was right, judgment to be entered on the verdict; if my so directing a verdict was wrong, a new trial granted or such other order entered as law and justice may require."

The United States government as a war measure in 1918 assumed control of all domestic wool in order to insure to the government a prior right of purchase of all the 1918 wool clip or of any portion thereof which it might require, the remainder to be allocated for civilian purposes under the direction of the War Industries Board. For this purpose the War Industries Board made government regulations for handling the wool clip. The regula-

tions provided the following method of procedure: The owner or grower was required to load the wool upon the railroad and consign it to any approved dealer in any one of designated distributing centres close to the Atlantic seaboard. The grower or consignee was entitled to receive an advance upon the wool so shipped up to but not exceeding seventy-five per cent of the fair estimated market value of his wool; and thereafter was entitled to receive the prices fixed by the government, after deducting the commission allowed to the dealer by the government, freight on shipment, and interest on all advances made on his wool to the date of the arrival of the wool at a distributing centre as shown by the railroad receipt. The approved dealers in the distributing centres were required to open and grade all their purchases or consignments as rapidly as possible after the arrival of the wool. Thereafter the government valuation committee determined the price of the wool in accordance with the regulations. The approved dealers were then required to store, insure, handle and deliver the wool under the government regulations. The regulations provided that the government could take the wool for its own use, at the prices determined by its committee plus a percentage of the selling price to cover compensation and commissions of approved dealers for their services. Wool not taken by the government for its own use was to be allocated for other uses, and the person receiving the same was to pay the same price and commissions which the government would have paid.

In September, 1918, the plaintiffs, who were approved wool dealers, as consignees received in Boston from the owners for sale two hundred and six bags of wool. The plaintiffs gave the bags their lot number 108–C, and placed them in their own warehouse, 285 Summer Street, Boston. Before September 7, 1918, they opened and graded the wool, and on that date notified the government that it was ready for inspection. Thereafter the government valuation committee inspected the wool, and on September 17, 1918, the wool administrator in writing notified the plaintiffs that the valuation committee had determined the price of the wool in accordance with the regulations. The notification conveyed to the plaintiffs the further information that the valuation committee had given the wool a lot number DF 4445, and had fixed the price at fifty-nine cents. The notice contained the following proposal of purchase by the government: " Terms are net cash ten (10)

days from date of confirmation. If this price is accepted by you, kindly sign the enclosed card and mail to this office." The plaintiffs signed the card of acceptance presumably on September 18, 1918, that being the date of the entry of the transaction in the plaintiffs' contract book. On or before September 30, 1918, the government confirmed the sale of September 18, 1918.

The letter of confirmation directed the plaintiffs "Do not warehouse in Quartermaster's name until wool is weighed and ready to bill." "Stencil all packages U. S. Q. M. C. mark lot number ." The plaintiffs packed the wool in two hundred and six bags marked U. S. Q. M. C. D. F. 4445, and transferred it in three lots, on September 17, 18 and 19, 1918, from their warehouse in their own teams, to the warehouse of the defendant, the National Dock and Storage Warehouse Company. The wool was weighed and ready to bill when delivered at the warehouse of the defendant. The defendant received the two hundred and six bags for storage and gave to the plaintiffs therefor on September 17, 18 and 19, a receipt or document, called a "Memorandum for Insurance," for the number of packages delivered to it on each of the enumerated days. Each document had a heading which read "This notice is not a warehouse receipt."

On October 2, 1918, the plaintiffs sent to the government quartermaster a receipt which reads:

"Lot DF 4445                                    October 2, 1918.
                          Warehouse Receipt
Received on storage for acct. of
                          Quartermasters Corps U. S. A.
and deliverable to it, the following described merchandise:
206 Bags Graded Triangle Average High 3/8's Wool Stored at 32 National & Dock Storage Warehouse Co., East Boston, Mass. . . ."

At the same time they sent a bill for this wool to the quartermasters corps, and for commissions, interest and the value of the bags as provided in the government regulations. This bill the United States paid in due course. From time to time the defendant rendered bills for storage of the wool to the plaintiffs. These bills the plaintiffs paid. Under a general arrangement between the government and the plaintiffs the latter did not ultimately

bear the storage charges; and if the government took the wool it paid the charges to the plaintiffs; if the government sold it, the purchaser paid them to the plaintiffs.

On March 17, 1919, the quartermasters corps directed the plaintiffs to deliver this wool to Hills and Nichols to whom the government had sold it. On March 21, 1919, Hills and Nichols directed the plaintiffs to deliver the wool to their teamsters. On March 25, 1919, the plaintiffs directed the defendant to deliver the wool to Glover and Company, the teamsters of Hills and Nichols. On March 25 and 26 the defendant delivered to Glover and Company on the plaintiffs' order, one hundred and ninety-three out of two hundred and six bags of the wool. The defendant was unable to find and deliver the remaining thirteen bags. Hills and Nichols paid the government for the two hundred and six bags, with all charges which the government had paid Brown and Adams thereon; and by the terms of the sale were to pay the plaintiffs for the storage charges paid by them to the defendant on this wool. The plaintiffs, however, billed Hills and Nichols only for the charges on the one hundred and ninety-three bags delivered, and remained actually out of pocket the amount of the warehouse charges on the thirteen bags which had been paid by them to the defendant.

On May 14, 1919, Hills and Nichols rendered a bill to the plaintiffs for the missing thirteen bags. On May 15, 1919, the plaintiffs presented to the defendant a claim for the thirteen bags, with a letter from the purchasing quartermaster to the defendant which reads: " We wish to advise you that we sold to Messrs. Hills & Nichols our lot DF–4445, stored by you in the name of Brown & Adams, and that upon presentation of documents to your warehouse through Brown & Adams 13 bags of this lot remains undelivered, due, we have been informed by Messrs. Brown & Adams, to the fact that you were unable to locate the 13 bags in question. As we have been paid for these 13 bags by Messrs. Hills & Nichols and Messrs. Hills & Nichols have been instructed by us to look to Brown & Adams for reimbursement or delivery, and as we have been informed that Messrs. Hills & Nichols have demanded of Brown & Adams either delivery of the 13 bags or payment therefor, these 13 bags not delivered by you are therefore the property of Messrs. Hills & Nichols and subject to their order, which, we

understand they have given to Brown & Adams.   The owners of the 13 bags are, therefore, Messrs. Brown & Adams, with whom you should either settle for the wool or make delivery.   We are sending Messrs. Brown & Adams a copy of this letter, which they have requested us to do, basing their request on yours of April 28th addressed to them asking them to furnish you with proof of ownership."   On May 22, 1919, Hills and Nichols wrote the defendant as follows: "Referring to the matter of the 13 bags Territory wool, lot DF–4445, which have been lost at your warehouse, would say that we hereby release you from all claim in connection with this loss, as we have billed this merchandise up to Messrs. Brown & Adams, Boston, and are holding them responsible for the loss."   On June 5, 1919, counsel for the defendant wrote to Brown and Adams as follows: " I think the original letter [May 14, 1919] you hold of Messrs. Hills & Nichols is sufficient as to the claim of that firm to the 13 bags."   " The defendant admitted that the loss or misdelivery of the wool was due to the negligence of its servants or agents."

Upon the foregoing admitted facts the only question is whether the plaintiffs are entitled to recover in contract or in tort the value of the thirteen bags of wool which were lost to the plaintiffs, or to their grantee and to the successors in title of the government, through the negligence of the defendant.   We think the plaintiffs should hold their verdict.   Under the terms of a consignment from the owner the plaintiffs held the wool in storage in their own warehouse for sale to the government or to other persons upon allocation as the government might elect, under the regulations of the government respecting the domestic wool supply.   The government elected to purchase the wool at the price put upon it by its valuation committee, and the plaintiffs sold the wool at the fixed price to the government.   The title passed to the government on September 18, 1918. St. 1908, c. 237, § 19, Rule 1.   Williston on Sales, § 343.   The plaintiffs with the passing of title stored the wool, as they were required to do under the regulations, in the warehouse of the defendant in their own name, and became obligated to the defendant to pay and did pay the charges of storage, with a right to reimbursement from the government or from the person who purchased the wool with the assent of the government.   By the direction of the government the bags con-

taining the wool were stencilled with a government mark, U.S. Q.M.C.D.F. and a number 4445. These particular wools were stored with other bags of wool bearing the same marks U.S.Q.M.C. D.F. under the requirements of the same regulations. We think the plaintiffs after their sale of the wool held it as bailees or trustees for the government until as agents for the government they stored it with the defendant. The mark U.S.Q.M.C. placed upon each bag was a notification to all the world that the government was the owner of the contents of the bags, and the defendant was thereby informed that the plaintiffs made the contract of bailment in behalf of the government. If the plaintiffs' right to maintain the action rested upon a contract express or implied which they made with the defendant in behalf of their known principal, it is plain a verdict should have been directed for the defendant as was requested. *Colburn* v. *Phillips,* 13 Gray, 64. The right of the plaintiffs, however, is not personal but derivative. The government of the United States as the owner and bailor of the wool transferred its title to the wool; and its rights under the contract of bailment passed to its grantee, Hills and Nichols, the defendant on notice becoming the bailee of Hills and Nichols. *Franklin* v. *Neate,* 13 M. & W. 481, 486. *Stonard* v. *Dunkin,* 2 Camp. 345. *Harman* v. *Anderson,* 2 Camp. 243. Williston on Sales, § 454. St. 1908, c. 237, § 43, cl. 3. A like devolution of title and of right passed to the plaintiffs upon the assignment of Hills and Nichols. No question of pleading is raised by the report and none can be considered. *Norris* v. *Allen,* 217 Mass. 573. *Boston & Maine Railroad* v. *T. Stuart & Son Co.* 236 Mass. 98, 104. It follows that judgment for the plaintiffs is to be entered on the verdict.

*So ordered.*